MAM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Jason Collura,
Plaintiff : Civil Action No. 08-CV-3880

v.

FILED
AUG 19 2008
MICHAEL E. KUNZ, Clerk
By PAL Dep. Clerk

City Of Philadelphia,
Defendant

COMPLAINT

JURISDICTION AND VENUE

1. At a time when constitutional and federal law matters are involved in a dispute the City of Philadelphia ceases to be a subject matter of the State Jurisdiction and surrenders itself into the jurisdiction of the United States courts.

2. This court has subject matter jurisdiction of this action under 28 U.S.C. § 1332 because the following federal laws were violated: Title 42 U.S.C. 1983,1985(3),1986,2000(a) ("This section applies to any acts of invidious discrimination in place of public accommodation and is not limited to discrimination on grounds of race,color,religion, or national origin.") (Nanez v. Ritzger 304 F. Supp. 354) (1969),2000a-1,2000d,the First Amendment and the Fourteenth Amendment Due Process Clause of the United States Constitution,and because all claims arisen from the matters have taken place in the City of Philadelphia.

STATEMENT OF CLAIM

3. Plaintiff asserts he had his civil rights violated initially on January 2007, at the Free Library of Philadelphia Independence Branch,plaintiff filed a complaint with this court in February, 2008.That case is still open although a order,which is unspecific and lacking a vital component of exact reason complaint was filed, has been proposed by defendants.

4. Plaintiff asserts, like stated above, filed a complaint,and defendant were served on March 7th, 2008,it is assumed the City informed the Free Library about the lawsuit by March 30th, 2008.

5. Plaintiff asserts on Monday, April 28th,2008 at 1:04 P.M. eastern standard time,a ban was created,see attached Exhibit A,and was given to plaintiff at 4:33 P.M. that day.The notice is dated April 25th,2008.It states plaintiff was suspended, only at that same branch he sued though, for "violating the following Standards of Acceptable Behavior." It then lists as the reason:
"Staring"
"Pushing the Municipal Guard upon entering the library"

Plaintiff will address the "staring",first off staring is not and has never been in the over 115 year history of the library,in the Standards of Acceptable Behavior, (see attached Exhibit B),ever at any point now or a hundred years ago,extensive research found this out.Also, the Supreme Court long,long, ago ruled in 1966,in Brown v. Louisiana, 383 U.S. at 140 (1966), that staring in a public library did not constitute a breach of peace.In addition to this,plaintiff asserts staff was staring at him,like they normally do,and plaintiff was staring back at someone who was already staring at him,if there is a violation at all the violation is on staff for staring at plaintiff.
Plaintiff asserts he did not "stare at a patron using a computer" as this is wanton.

6. Plaintiff will address the second and final claim "pushing and striking municipal guard upon entry to the library" , plaintiff asserts that on that day it was called a "elbow" then on the form it was a "push or strike" which is distinctly different.Plaintiff entered the library like he has always done and no pushing occurred at all.In addition to this on February 15th at about 10:04 a.m., plaintiff entered the library walked past the same municipal guard who who coming out after plaintiff walked past guard,the guard took a step back and elbowed plaintiff in the back.If anyone was guilty of striking someone it was the municipal guard.The municipal guard knew plaintiff was obviously going to mention this in court, which was at this point the first hearing was just days away,so the false claim was done for two reasons,first,it was to neutralize plaintiff's accurate claim that he was elbowed some seventy days prior,in that it would make it appear as if my claim was coming after he said his,and secondly, defendant's concluded that me looking back at them,even if lied to as "staring at staff" would not suffice as to a ban.By creating this claim they were able to achieve both things,or at least the second.Plaintiff asserts when the court looks at the totality of the circumstances it will come to the conclusion that this did not take place.Plaintiff asserts a timeline has clearly been established. Plaintiff asserts the library got word they were being sued by no later than March 30th,2008, this notice starts at April 2nd 2008,after including four dates after their Motion To Dismiss was denied.A May 1st ,2008 first hearing on the lawsuit was scheduled on March 28th, 2008.Plaintiff asserts he was never banned,for a second at any public,private,school library in his entire life.Plaintiff asserts all of the sudden,62 hours before the first hearing of plaintiff's lawsuit for already violating his civil rights plaintiff was given a notice he was "banned from that branch."

7. Plaintiff was banned for retaliation and for no other reason.Plaintiff asserts the court will see on the notice the ban is only at that branch,which is the same branch he sued for already having violated his civil rights.Plaintiff knows it is procedure in every case when a person is banned he is banned from all about fifty three branches of the library,it is

effective through out.Plaintiff knows this for a fact.However slight the "alleged offense" , it is a universal ban.In the instant case, plaintiff, again was only banned from this branch,there are two reasons for this,the first is it is for spite because it was the branch that was sued and the second and primary reason,and probably under advice from city counsel,the defendants will argue that I have/had access other branches.Plaintiff asserts to the court that this point is completely irrelevant to the fact of plaintiff was banned from the library for retaliation,albeit one branch,as to he shouldn't have been,regardless if he has/had access to other branches,if plaintiff couldn't be banned from all branches he shouldn't be banned from one.Plaintiff likens it to a person being banned from reading one page in a fifty three page book, but can read all the other pages,if the reason wasn't valid from the one page banning,regardless whether or not they could read the other pages,then it must be overturned,the fact it was only one page is moot,it is a ban.

8. Plaintiff "appealed" notice and a meeting was held on May 14th, 2008 with a director in relation to the notice.The director ended the meeting with "If nothing else at least I listened." On or around July 9th,2008 Plaintiff received a decision from the director it was affirmed even though knew a timeline had clearly been established and she knew who was right and who was wrong.

9. In addition all of this, Mark V. Maguire the assistant City Solicitor,who was assigned to the first lawsuit,as soon as he discovered the his effort to dismiss the suit was futile,contacted a certain agency,who shall go nameless at this point in time, which has some power over certain citizens,and made false and malicious statements about plaintiff,they were completely frivolous lacked any validity.This was a deliberate attempt to intimidate and coerce plaintiff to drop the suit,there was not other purpose or reason.Plaintiff feels sanctions are appropriate.

Also,about thrity days later,again after the defendants knew they could not get the suit dismissed, and one day before a scheduled meeting plaintiff had with a director about a appeal, surely under advice from Mr. Maguire,a employee named Richard Summers who does not work at that branch and has nothing to do with anything relating to this case contacted the same agency mentioned above with the same malice as Mr. Maguire,to co erce and intimidate plaintiff to drop the suit.Plaintiff will address this intimidation by these two individuals further in court.

10. Plaintiff asserts the record is full of facts to support a court determination that the library acted with a discriminatory intent.

## LEGAL ARGUMENT

11. The Supreme Court first entertained the idea that citizens have a First Amendment Right to receive information in *Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct 862, 87 L. E.d. 1313 (1943) "This freedom embraces the right to distribute literature…..and

*necessarily protects the right to receive it."* Id. At 143,63 S.Ct. at 863 (emphasis supplied) Because the freedom to receive information was " so clearly vital to the presentation to the preservation of a free society" the Court announced that it " must fully be preserved ." Id. at 146-47 63 S.Ct. at 865

12. In, *Griswold v. Connecticut*, 381 U.S. 479,85 S.Ct. 1678, 14 L.Ed. 2d 542 (1965), the Court again in a plurality opinion,again placed imprimatur on the constitutional right to receive information. They stated the State may not consistently with the spirit of the First Amendment,contract the spectrum of available knowledge.The right of freedom of speech and press includes not only the right to utter or to print,but the right to receive,the right to read.... and the freedom of inquiry,freedom of thought.Without those peripheral rights the specific rights would be less secure.Id. at 482-483,855 S.Ct. at 1680-81. Hence, the First Amendment like other constitutional guarantees,encompassed the "penumbra" right to receive information to ensure its fullest exercise. Id. at 483,85, S.Ct. 1681

13. In *Lamont v. Postmaster General,* 381 U.S. 301,85 S.Ct. 1493, 14 L.Ed. 2d 398 (1965) Justice Brennan's oft quoted remark in *Lamont* now constitutes the hallmark of the right to receive information: "[t]he dissemination of ideas can accomplish nothing if otherwise willing addresses are not free to receive and consider them.... [for] [i]t would be a barren marketplace of ideas that had only sellers and no buyers." Id. at 308

Justice Brennan states "It is the duty of the courts to be watchful of the constitutional rights of the citizens and against any stealthy encroachments thereon" Id. at 310

14. In *Stanley v. Georgia,* 394 U.S. 357, 89 S. Ct. 1243, 22 L. Ed. 2d 542 (1969), the majority of the Supreme Court agreed that the First Amendment encompasses the right to receive information and ideas.

15. In *Kleindienst v. Mandel,* 408 U.S. 753 , 92 S. Ct. 2576, 33 L. Ed. 2d 683 (1972), the Supreme Court once again stated the (First Amendment encompasses "right to receive information and ideas.")

16. In *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765 ,98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978) , The Supreme Court held stated , (" First Amendment ... affords (s) the public access to discussion,debate, and the dissemination of information and ideas.") Id.at 783

17. In *Board of Education v. Pico* ,457 U.S. 853 (1982) , Id. at 867, a plurality of the Supreme Court indicated that the right to receive information: is an inherent collary of the rights of free speech and press that are explicitly guaranteed by the Constitution, in two senses. First the right to receive ideas follows ineluctably from the sender's First Amendment right to sent them: "The right of freedom of speech and press....embraces the right to distribute literature, and necessarily protects the right to receive it." *Maritn v. Struthers,* 319 U.S. 141 , 319 U.S. 143 (1943) (citation omitted).

18. James Madison is the Father of the Bill of Rights and also the Constitution,he drafted many laws we have today and created the first ten amendments of the Constitution, was quoted as saying, "Diffusion of knowledge...... is the only guardian of liberty." There is no library is America that is closest to the original Constitution than this exact one.Of all the names for a for a city or state to name a library,this library was named Independence.It is this very same "Independence" of that is which is being sued for violating federal code and two Amendments of the Constitution,a Constitution they sit within mere feet of.

19. The vigilant protection of constitutional freedoms is nowhere more vital than in a public library.The city government intentionally opened the Free Library of Philadelphia for the exercise of specific First Amendment rights,and again,they named this library "Independence" to strengthen that base even more.First Amendment claim in the right to receive information and ideas identifies vital role played in public libraries in promoting the fullest exercise of that right.Plaintiff's fundamental propostion is that citizen's don't shed their constitutional rights when at the doors of a public library,that would certainly include one named "Independence" if no other.First Amendment freedoms are most in danger when the government whether, city or state, seeks to control though or justify it's laws for that impermissible end.The library has clearly violated liberty interest of plaintiff.

## CLAIM FOR RELIEF

20. The defendants violated plaintiff's civil rights by imposing frivolous retaliatory ban and acting with discriminatory intent.Plaintiff will prove every element of claim.Plaintiff feels if the ban has expired, in which it is set to do in less than three months, and verdict or decision has not been reached,which is highly likely given the short amount of time and the normal time process of this Court, than the defendants will argue the ban is expired and the claim is moot since effectively there woud be no ban at that point.Plaintiff feels that the Court could possibly concur with that argument.Plaintiff asserts he will be asking for other relief, but if the ban has expired while still in litigation,than he will be asking for punitive damages under Title 42 U.S.C 1983.Plaintiff asserts this has to be done in order for defendants not to escape punishment only due to the fact that the ban has expired and cites *Farbstein v. Public Library* , 323 F. Supp 2d 414, (2004) as a case in which plaintiff's case was dismissed because his ban had naturally expired,meaning he had access at current time and was in in no apparent danger of losing access in the future.Punitive damages act as a detterent for parties repeating acts or doing further harm.

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) declaratory judgement that the ban is wrong,illegal, and/or unconstitutional;

(b) permanent injunction overturing the ban and precluding future frivolous bans

(c) a public apology from the defendants

(d) punitive damages if the ban has expired, for the suffering plaintiff has incurred

(e) such other and further relief is reasonable and just.

Dated: August 12th, 2008

Jason Collura, Pro Se
Box 934
Philadelphia, PA 19105

# EXHIBIT A

# FREE LIBRARY OF PHILADELPHIA

## NOTICE TO EXPEL FROM LIBRARY

DATE: April 25, 2008

TO: Jason Collura
700 S. 15th Street, Philadelphia, PA 19146

Your visiting privileges to the following:

Independence Branch Library
18 S. 7th Street

have been suspended for violating the following *Standard(s) of Acceptable Behavior* on April 2, 10, 11, 12, 15, and 25, 2008:

- Staring at patrons using a computer
- Staring at staff,
- Pushing and striking the Municipal Guard upon entering the library

This suspension will be for the following period of time:
6 months: April 25 up through and including October 25, 2008

If you attempt to re-enter the library before this time has ended, you will be ejected and staff will contact the police.

**Notice approved by:**

Julie Doty
North/South Area Administrator (215) 686-5310

**APPEAL PROCESS.** If you wish to contest this suspension, you may contact the following library administrator:

Joe Benford
Chief, Extensions Division (215) 686-5310

# EXHIBIT B

FREE LIBRARY OF PHILADELPHIA

# STANDARDS OF ACCEPTABLE BEHAVIOR

The mission of The Free Library of Philadelphia is to provide to all segments of the population of Philadelphia a comprehensive collection of recorded ideas, artistic expression and information; to assure ease of access to these materials; and to offer programs to stimulate the awareness and use of these resources.

To promote and maintain such an environment, all customers shall be engaged in activities associated with the use of a library while in the building. Customers not engaged in reading, studying, using library materials or participating in a library program may be required to leave the building.

## STANDARDS OF ACCEPTABLE BEHAVIOR

The standards articulated in this policy are intended to clarify and delineate acceptable behavior. Clear standards encourage constructive solutions to problem behavior and assure Library users and Library employees unimpeded access to information free from harassment, abuse or other undue stress. When customers are not complying with library regulations, library staff and/or security officers may request customers to show appropriate documents for purposes of identification. Customers engaged in unacceptable conduct may be required to leave the building. If a customer refuses, the police will be called. Where criminal actions are committed, violators will be subject to arrest and will be prosecuted to the full extent of the law.

## UNACCEPTABLE CONDUCT

- Engaging in any illegal activity.
- Using sound or viewing images in ways that disturb other customers or staff. Disturbing images include, but are not restricted to, the display of sexually explicit material on computers. Library staff is authorized to determine whether a customer is disturbing others.
- Making excessive noise: use of cell phones; use of radios, recorders, televisions, portable audio players or other electronic equipment without the use of earphones, except as part of a library event; loud talking, shouting.
- Unaccompanied children 6 years old or under are not allowed in the building. Children of this age must be accompanied at all times by a person who is responsible for their care, and who remains with them in all areas of the library.
- Fighting, threats, stalking or displaying weapons.
- Using or distributing controlled substances.
- Intoxication or drunken behavior.
- Sleeping.
- Loitering on library premises – i.e., conduct not associated with the use of a library. This includes not engaging in reading, studying, appropriate computer use, etc.
- Consuming food or beverages, except for approved occasions in designated areas.
- Smoking.
- Sexual acts: e.g., flashing, unwanted physical contact, touching, petting or sexually-oriented gestures, sounds or comments.
- Using verbal or written abuse: e.g., obscene language or discriminatory remarks.
- Having personal hygiene that is offensive so as to constitute a nuisance to others.
- Soliciting of sex, money or other favors, in person or electronically.
- Gambling.
- Mutilating, damaging or defacing of any library material.
- Theft of library materials or property or personal property.
- Removing library materials from the library before checking them out. All library material must be charged out before being taken from the premises. Library materials that have not been charged out may not be taken to the rest rooms or non-public areas.
- Bags and other materials which are difficult to inspect because of the nature of the items – e.g., underwear, bed clothes, etc. – are not allowed in the building. Oversized bags and all articles that could be used to conceal library property are subject to inspection by security or other authorized personnel.
- Distributing materials, in person or electronically, to either staff or library users without prior approval of the designated library staff person.
- No bicycles, tricycles, scooters, skateboards or skates. All sporting equipment should remain outside the library.
- Shaving, bathing or washing of clothes or hair.
- Shirts and shoes must be worn at all times.
- No animals other than those assisting disabled persons.

**Approved by the Board of Trustees of the Free Library of Philadelphia (March 9, 1993; updated September 18, 2002; revisions approved November 9, 2004)**

12/04