```
             IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JASON COLLURA                   :      CIVIL ACTION
                                :
         v.                     :
                                :
CITY OF PHILADELPHIA            :      NO. 08-3880
```

MEMORANDUM

McLaughlin, J.                                      August 9, 2010

This is an unlawful retaliation case. Jason Collura brought a pro se civil rights action against the City of Philadelphia on February 15, 2008, challenging what he alleged to be a policy of the Independence Branch of the Philadelphia Free Library to reserve three of the library tables at the branch during certain hours for the exclusive use of people who are Chinese or Asian. Civil Action No. 08-746. The 08-746 lawsuit was served on March 6, 2008, and the City answered on March 27, 2008. The employees of the Independence Branch of the Free Library were informed of the filing of the lawsuit in March of 2008.[1]

---

[1] The City of Philadelphia moved to dismiss the 08-746 action, and the Court denied the motion. Mr. Collura and the City ultimately agreed to a dismissal of the lawsuit in return for the entry of a consent order that the Free Library of Philadelphia may not prohibit any individual, at any time, from sitting at or utilizing any table or seating arrangement because of that individual's race or ethnicity. That case was dismissed on October 10, 2008.

On April 25, 2008, Mr. Collura was expelled from the Independence Branch of the library. He then filed this lawsuit, alleging that he was retaliated against for the filing of Civil Action No. 08-746. The Court conducted a bench trial in this case on September 10, 2009. Although Mr. Collura was pro se during most of this litigation, he retained counsel prior to the bench trial and he was represented by counsel during the trial.

I.  Findings of Fact

Jason Collura became a regular user of the Independence Branch of the public library on April 1, 2001, 30 days after the library opened. Starting in January, 2007, he was told by two security guards, Corey Dorsey and "Gwenn," that he could not sit in a section of the library near the shelves of Asian books because the tables were reserved for Chinese or Asian people.

Mr. Collura wrote anonymous letters to the library, complaining of this policy. He also contacted outside agencies to complain but nothing came of his complaints. Mr. Collura filed the lawsuit described above, Civil Action NO. 08-746, on February 15, 2008, alleging that the City violated his constitutional rights. The City was served on March 6, 2008, and answered on March 27, 2008. The library employees were told about Mr. Collura's lawsuit in March 2008.

When Jennifer Chang, the manager of the Independence Branch Library, learned about Mr. Collura's lawsuit prior to April 10, 2008, she asked her union representative, Steve Baron, to come in and observe. Mr. Baron told her that Mr. Collura had a previous conviction for terroristic threats. She was told by her union representative to document all behavior that may be inappropriate or pose a danger to the staff.

On April 10, 2008, Ms. Chang wrote a memorandum to Julie Doty, Area Administrator for the library, with the re line: "BAN access to IND of Jason Collura." Ms. Chang stated in the memo that Mr. Collura had been "aggressively staring" at staff and young girls and had harassed a municipal guard, Corey Dorsey. She concluded the memo by stating: "He clearly poses extreme danger to the safety of the patrons who visit us."

On April 11, 2008, Steffen Boyd, supervisor of the mental health unit of the Adult Probation Department, received a call from Steve Baron of District Council 47, the union that represents library employees. Mr. Baron told Mr. Boyd that he had received a complaint or concern about Mr. Collura staring at Asian people in the library. Mr. Boyd also got a call from Richard Somers, supervisor of the security guards for the Free Library of Philadelphia. Mr. Somers reiterated what Mr. Baron had said: Mr. Collura was in the Asian section of the library and was staring at people and making them feel uncomfortable.

Mr. Boyd was the supervisor of David O'Brien, Mr. Collura's probation officer. Mr. Collura was on probation for unlawful use of the computer, terroristic threats, and intimidation. Mr. O'Brien learned about these two calls from Mr. Boyd and told Mr. Collura about them on May 5, 2008. Nothing negative happened to Mr. Collura's probation status as a result of these calls.

On April 25, 2008, Corey Dorsey was working as a municipal guard at the Independence Branch Library. Shortly after 10:00 a.m., he was wiping down the front door when Mr. Collura came into the library. Mr. Dorsey felt Mr. Collura "nudge" or "bump" him on his forearm when Mr. Collura came through the door. Mr. Dorsey was aware of Mr. Collura's lawsuit and Mr. Chang's April 10 memo before this incident. Mr. Dorsey went into the library and told Ms. Chang about the incident and then called the police. The police came and Mr. Dorsey told the police that Mr. Collura had bumped his forearm. The police did not arrest Mr. Collura.

Mr. Dorsey and Ms. Chang approached Mr. Collura later that day. Ms. Chang gave to Mr. Collura a notice of expulsion from the library. Exhibit P-3. Mr. Collura accepted the expulsion notice and left the library. Prior to the April 25th incident, Mr. Dorsey talked with Ms. Chang and Margaret Bernardi, the Children's Librarian, about the lawsuit. Mr. Dorsey admitted

4

that he told Mr. Collura that he could not sit in the section of the library near the Asian books because the area was reserved for Chinese people. The actual notice, D-11, that limits access to several tables in the library, states that the area is reserved "for people using Chinese materials only."

Mr. Collura appealed the notice of expulsion that was limited to one branch. He appealed to Joe Benford, as the notice directed. In the middle of the meeting with Mr. Benford, Richard Somers, Mr. Dorsey's boss, walked in. Mr. Collura learned that he would have to appeal to Claudia Martinez, the Acting Director of Library Operations. He did so and met with Ms. Martinez on May 14, 2008. Ms. Martinez sent Mr. Collura a letter dated June 5, 2008, in which she stated that the expulsion was warranted because of the "physical contact with a staff member."

Jennifer Chang had two contacts with Mr. Collura. The first occasion occurred prior to April 25, 2008, when Ms. Chang was at the reference desk on a Saturday. A patron complained that Mr. Collura cut in line to use the computer. Ms. Chang asked Mr. Collura to go back in the line. Mr. Collura left the building. The second contact was when she gave Mr. Collura the expulsion notice on April 25, 2008. Prior to the April 25 incident, Ms. Chang had heard reports that Mr. Collura would stare at people and make them feel uncomfortable. Ms. Chang testified that "[t]he conduct that finally permitted her to get

5

the suspension was that he physically attacked the guard." Tr. 144. She never explained why she did not take action with respect to Mr. Collura prior to learning of his lawsuit.

Margaret Bernardi became aware of Mr. Collura in the winter of 2007. She noticed that he had a habit of staring at women. Other staff members noticed that he was staring. Ms. Bernardi admitted that the effort to suspend Mr. Collura was based on his conduct but also "the lawsuit was tied in to his conduct." Tr. 161. The library staff felt that they needed to protect themselves from untrue allegations and so needed to document their interaction with Mr. Collura.

II. Conclusions of Law

To resolve Mr. Collura's claims, it is first necessary to determine whether the City can be liable for any retaliatory action against the plaintiff by City employees under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978). Monell limits the liability of local governments under § 1983 to violations of rights that result from a municipality's custom, policy, or practice.

The City argues that the City cannot be liable to the plaintiff because no City employee retaliated against the plaintiff, and even if any employee did retaliate, it was not pursuant to any custom or practice of the City. The plaintiff

6

argues that the City can be liable because he seeks only injunctive relief in the form of vacation of the suspension notice that was issued in April 2008.

Although the Court has serious concerns that the library employees took action against the plaintiff at least in part because of his lawsuit, the Court finds that <u>Monell</u> does apply to injunctive claims like those here and that the employees' conduct, whether retaliatory or not, was not pursuant to a custom or practice of the City.[2]

<u>Monell</u>, in holding that local governments were "persons" liable under § 1983, held that they could be sued directly under the statute "for monetary, declaratory, <u>or injunctive relief</u>" only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 691. (emphasis added).

In at least one subsequent decision, the Supreme Court applied <u>Monell</u>'s "custom or practice" requirement to a suit

---

[2] Although the Court found credible the employees' testimony concerning what they perceived as the plaintiff's harassing conduct during 2007 and early 2008, they did not document it or take any action against Mr. Collura until he filed the 08-746 lawsuit. Ms. Bernardi was candid in stating that the effort to suspend Mr. Collura was "tied to" his lawsuit.

7

seeking only declaratory and injunctive relief.[3] Despite this, one circuit court has held that <u>Monell</u>'s "custom and practice" requirement does not apply to suits against a local government for prospective injunctive relief. <u>Chaloux v. Killeen</u>, 996 F.2d 247, 251 (9th Cir. 1989). The <u>Chaloux</u> court held that the policy justification for <u>Monell</u>'s "custom and practice" requirement was a desire to limit § 1983 damage awards to municipalities and that the requirement therefore should not apply to suits seeking only prospective relief.

Other circuit courts have reached the opposite conclusion, following the express language of <u>Monell</u>. See <u>Dirrane v. Brookline Police Dept.</u>, 315 F.3d 65, 71 (1st Cir. 2002); <u>Nix v. Norman</u>, 879 F.2d 429, 433 (8th Cir. 1989); see also <u>Gernetzke v. Kenosha Unified Sch. Dist. No. 1</u>, 274 F.3d 464, 468 (7th Cir. 2001) (noting that the "predominant though not

---

[3] In <u>Owen v. City of Independence</u>, 445 U.S. 622 (1980), a city's police chief sued the city, its mayor, and its manager, alleging he had been deprived of his due process rights when he was fired without a hearing or appeal on the basis of allegations of misconduct. The chief sued only for declaratory and injunctive relief. The court of appeals held that <u>Monell</u> was satisfied because the plaintiff's dismissal was approved by the city council and therefore was official policy or an action by those whose acts may fairly be said to represent official policy. The court of appeals, however, held that the defendants were entitled to qualified immunity because the officials acted in good faith. The Supreme Court reversed, finding that the city could not assert the good faith of its officers as a basis for immunity. <u>Id.</u> at 639. In doing so, although the Court did not specifically address the issue, it implicitly assumed that <u>Monell</u> would apply to a suit seeking injunctive and declaratory relief.

8

unanimous view is that Monell's holding applies regardless of the nature of the relief sought," but declining to reach the issue).

The United States Court of Appeals for the Third Circuit has not yet reached the issue, expressly declining to do so in a recent case. McTernan v. City of York, 564 F.3d 636, 659 n.13 (3d Cir. 2009) (declining to reach a plaintiff's argument that Monell does not apply to injunctive relief, finding it waived as it was not raised before the district court).

Although the Court appreciates the argument that the rationale of Monell does not apply to a request for injunctive relief, such an argument is inconsistent with the overwhelming consensus of courts of appeals and the Supreme Court cases discussed above. The Court, therefore, holds that Monell does apply to injunctive relief.

Having decided that Monell applies, the next question is whether the plaintiff has shown by a preponderance of the evidence that the employees acted pursuant to a policy or custom within the meaning of Monell. The Court finds that the plaintiff has not carried his burden.

A plaintiff can make the required showing under Monell in two ways. A plaintiff can show a "policy" if it can point to an "an official proclamation, policy, or edict" made by a decisionmaker possessing the "final authority" to establish municipal policy. McTernan, 564 F.3d at 657-8 (quoting Andrews

9

v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990)). A plaintiff can show a "custom" if it can establish a course of conduct by government officials that, although not expressly authorized by law, is so "permanently and well-settled as to virtually constitute law" and that is known and acquiesced to by the relevant decision-maker. Id. (internal quotations and citations omitted).

Mr. Collura did not produce evidence to show that library employees were acting pursuant to an official proclamation, policy, or edict in expelling Mr. Collura from the library, or that an official policy was involved in the contact by union representative Steve Baron with the probation department about Mr. Collura. Mr. Collura also did not produce evidence to show that these actions were part of a course of conduct.

Because the Court has found that Monell applies to Mr. Collura's claims and that Mr. Collura has failed to establish that any deprivation of his rights was the result of a City or library policy or practice, the Court finds Mr. Collura's claims to be barred by Monell. The Court must therefore render a verdict for the defendant on Mr. Collura's claims.

An appropriate order shall issue separately.